| UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK | |
|---|---|
| ------------------------------------------------------------X <br> VEOLIA TRANSPORTATION SERVICES, INC., d/b/a NASSAU INTER-COUNTY EXPRESS BUS, <br>                 Plaintiff, <br><br>           against <br><br> TRANSPORTATION WORKERS UNION OF AMERICA, LOCAL 252, AFL-CIO, <br><br>                 Defendant. <br> ------------------------------------------------------------X | **FILED** <br> **CLERK** <br><br> 11/6/2015 9:51 am <br><br> **U.S. DISTRICT COURT** <br> **EASTERN DISTRICT OF NEW YORK** <br> **LONG ISLAND OFFICE** <br><br> **OPINION AND ORDER** <br> **14-CV-6829 (SJF)** |

FEUERSTEIN, District Judge:

On November 20, 2014, plaintiff Veolia Transportation Services, Inc., d/b/a Nassau Inter-County Express Bus ("plaintiff" or "company") commenced this action seeking to vacate an October 21, 2014, arbitration award (arbitration award) which required it to arbitrate multiple employee grievances on a single calendar day. [Docket No. 1]. On January 23, 2015, defendant Transportation Workers Union of America, Local 252 ("defendant" or "union") filed an answer with a counterclaim seeking confirmation of the arbitration award. [Docket No. 10]. On June 25, 2015, the parties moved for summary judgment. [Docket Nos. 25, 38]. For the reasons that follow, defendant's motion is granted, and plaintiff's motion is denied.

                I.        Factual Background

On January 1, 2012, plaintiff took over operation of the Nassau County Inter-County Express (NICE) Bus Service from the Metropolitan Suburban Bus Authority, a division of the Metropolitan Transit Authority. Plaintiff's Rule 56.1 Statement of Undisputed Material Facts (Pl.'s Stmt.) 1–2, ¶¶ 1–5. Under the collective bargaining agreement in effect at the time, the union brought multiple grievances before a single arbitrator on a single day. Pl.'s Stmt. 2, ¶¶ 8–9.

The company entered into a new collective bargaining agreement with the union, which became effective January 1, 2012 through April 15, 2017. Pl.'s Stmt. 2–3, ¶¶ 10, 12. Article I, Section 9, provided that "past practices governing operations in the bargaining unit shall be respected by the parties to the extent identified in Exhibit "B" ["Work Rules"], but the Company shall have the right to establish new rules and work practices in accordance with the provisions but not inconsistent with the terms of this agreement." Pl.'s Stmt. 3, ¶¶ 13–15. Similarly, Article XXI "Work Rules" provided that "Exhibit 'B' attached hereto and made a part hereof contains work rules and past practices in existence prior to the execution of this Agreement which shall be continued under this Agreement, all other past practices shall be void effective January 1, 2012." Pl.'s Stmt. 3, ¶ 14. Neither party submitted a list of past practices, and Exhibit B remained blank. Pl.'s Stmt. 4, ¶¶ 18–19.

Article II, Section 2 governed grievance procedure and defined a "grievance" or "complaint" as "any dispute arising out of the interpretation or application of the provisions of, or attachments, [sic] to this Agreement." Pl.'s Stmt. 4, ¶ 21, Amended Declaration of Edward J. Groarke in Support of Defendant's Motion for Summary Judgment (Groarke Decl.), Exhibit (Ex.) A, at 7. It conferred upon the arbitrator "the authority to decide all grievances and complaints," but not "to render any opinion or make any award, (i) which amends, modifies, or changes this Agreement or any of its terms; or (ii) limiting or interfering in any way with the Company's managerial responsibility to run its transit facilities safely, efficiently, and economically." Groarke Decl., Ex. A, at 8.

The collective bargaining agreement set forth the grievance procedure: At the first step, an aggrieved employee and the union steward present the grievance to a manager within fourteen (14) days of its occurrence, and if not satisfied with the outcome, at a hearing with the Location's Chief Operating officer or his designee within seven (7) days. Groarke Decl., Ex. A, at 8. If the

union is not satisfied with the disposition of the grievance at the first step,

> or in the case where there is a dispute concerning the interpretation or application of the provision of this collective bargaining agreement, then in any such case, at the written request of the party thereto desiring arbitration as herein provided, the matter shall be submitted for decision to the Impartial Arbitrator.

Groarke Decl., Ex. A, at 8.  Additionally,

> If the requested arbitration arises out of interpretation or application of the provisions of this collective bargaining agreement, the request for such arbitration by the Company or by the Union, as the case may be, shall be made within seven (7) days after such dispute arises.  The request for such arbitration shall be made to the Impartial Arbitrator with a copy of the request sent to the opposing side.

Groarke Decl., Ex. A, at 8–9.

The agreement provided that the arbitrator "shall be empowered to excuse a failure to comply with the time limitations for good cause shown." Groarke Decl., Ex. A, at 9.  It provided that the arbitrator's award "shall be binding and conclusive upon the Company, the Union, and the employee."  Groarke Decl., Ex. A, at 9.

By letter date June 7, 2012, union counsel provided company counsel with a list of seven (7) grievances for arbitration.  Affirmation of James N. Foster, Jr. in Support of Plaintiff's Motion for Summary Judgment (Foster Aff.), Exhibit (Ex.) D; Pl.'s Stmt. 6–7, ¶¶ 29–31.  A dispute arose regarding whether the arbitrator should hear multiple grievances on the same day, and the arbitrator concluded that, in the absence of consent of the parties, he could not resolve the dispute; he recommended that the parties raise the issue before another arbitrator.  Pl.'s Stmt. 7–9, ¶¶ 32–53; *Transp. Workers Union of Am. v. Veolia Transp. Servs., Inc.*, 24 F. Supp. 3d 223, 225 (E.D.N.Y. 2014).

On July 16, 2012, the union filed a grievance on behalf of all company employees regarding the company's practice of scheduling one (1) grievance arbitration per hearing date,

which the company denied after a hearing at the first step of the grievance procedure, stating that the arbitrator had already decided the issue. Pl.'s Stmt. 10–11, ¶¶ 63–70. On November 9, 2012, the union sent the company a notice of arbitration, but the company refused to submit the multiple-grievance-per-day dispute to arbitration, again arguing that the arbitrator had previously decided the issue in its favor. *Id.* at 226.

On December 12, 2012, the union commenced an action to compel arbitration under the Federal Arbitration Act 9 U.S.C. §§ 1–16, and the Labor Management Relations (Taft–Hartley) Act of 1947 § 301(a), 29 U.S.C. §§ 185(a). On March 18, 2014, the Honorable Arthur D. Spatt ordered the parties to arbitrate their dispute, finding that it fell within the scope of the grievance-arbitration clause, that the arbitrator had not previously decided the issue, and that an arbitrator, and not the court, was required to decide any timeliness issue. *Transp. Workers Union of Am.*, 24 F. Supp. 3d at 230.

Arbitrator Carol Wittenberg held a hearing on July 21, 2014, and, finding that the company had violated the collective bargaining agreement by refusing to arbitrate multiple grievances on a single calendar date, sustained the union's grievance on October 21, 2014. Groarke Decl., Arbitration Award, Ex. A, at 1, 19. Initially, the arbitrator rejected as "disingenuous" the company's argument that the union's November 9, 2012 arbitration request was untimely because it was not made within seven (7) days after the company's July 23, 2012 denial of the grievance. *Id.* at 14. She explained that the parties reached an impasse on the issue of the arbitrability of the company's single-grievance-per-calendar-day policy subsequent to the company's July 23, 2012 refusal to arbitrate the issue. *Id.* at 14–15. The arbitrator also found that the company's policy constituted a continuing violation of the collective bargaining agreement, which the union could challenge each time that the company refused to schedule multiple grievances on the same calendar date. *Id.* at 15.

The arbitrator found that the Article II, Section 2's plain language was not clear and unambiguous as to whether the company could refuse to schedule multiple grievances on the same calendar date, as it employed both the singular and plural when referring to "grievance(s)" and "complaint(s)" in the definition and grievance-procedure sections, and used the plural form in the section defining the arbitrator's authority. *Id.* at 16. Consequently, she looked to the bargaining history to understand the parties' intent, and found (1) that the parties, construing identical language in their former agreement, formerly conducted multiple grievance-arbitrations on the same calendar date, and (2) that Ben Fernandez, MTA's former general counsel, negotiated on behalf of the company in reaching the current collective bargaining agreement. *Id.*

## II. DISCUSSION

The company moves for summary judgment seeking vacatur of the October 21, 2014 arbitration award, arguing that the arbitrator ignored the collective bargaining agreement by: (1) finding the union's grievance timely; and (2) finding that the company violated the collective bargaining agreement. Pl.'s Br. 5–12, 12–22. The union moves to confirm the arbitration award, urging deference, and arguing that it draws its essence from the collective bargaining agreement. Def.'s Br. 18–22.

### A. Summary Judgment Standard.

A court may grant summary judgment if there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting FRCP 56(a)). Thus, where the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact, the moving party is entitled to judgment. *Williams v. R.H. Donnelly Corp.*, 368 F.3d 123, 126 (2d Cir. 2004). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Id.*; *Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*,

150 F.3d 132, 137 (2d Cir. 1998). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the [specific] pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If there is any evidence in the record from which a reasonable inference may be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

A "genuine" issue of fact exists only if the "evidence [presented] is such that a reasonable jury could return a verdict for the nonmoving party." *Giordano v. City of New York*, 274 F.3d 740, 746-47 (2d Cir. 2001). "[A]ttempts to twist the record do not create a genuine issue of material fact for a jury." *Kim v. Son*, No. 05 Civ. 1262, 2007 WL 1989473, at *6 (E.D.N.Y. July 9, 2007). Therefore, "where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). In addition, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). In reviewing the parties' respective Local Rule 56.1 statements, the Court finds no genuine issue of material fact.

### B. Vacatur of Arbitration Awards.

The Second Circuit has stressed that "it is difficult to overstate the strong federal policy in favor of arbitration." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (citing *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 24 (2d Cir. 1995)). Accordingly, courts must give an arbitrator's decision "great deference," *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003), and a play only a "limited role" in reviewing them that does not include "reexamin[ing] the merits" even if the

award "arises out of a misinterpretation of the contract or a factual error." *Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S. Ct. 364, 369–70 (1987)). A district court must affirm an arbitration award if it "draws its essence from the collective bargaining agreement" and does not does not constitute the arbitrator's "own brand of industrial justice." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 1361 (1960). A "court is forbidden to substitute its own interpretation even if convinced that the arbitrator's interpretation was not only wrong, but plainly wrong." *Local 1199, Drug, Hosp. & Health Care Employees Union, RWDSU, AFL-CIO v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) (quoting *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1505 (7 Cir. 1991)) (internal quotations omitted). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38, 108 S. Ct. at 371.

The Federal Arbitration Act, 9 U.S.C. § 10(a) sets forth four (4) circumstances in which a court may set aside an arbitration award: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them;" (3) where the arbitrator's misconduct prejudices a party; or "(4) where the arbitrator's exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Additionally, a court may set aside an award if it exhibits a "manifest disregard of law." *Wilko v. Swan*, 346 U.S. 427, 436, 74 S. Ct. 182 (1953), *overruled on other grounds*, *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 109 S. Ct. 1917 (1989). This requires "'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'"

7

*Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208-09 (2d Cir. 2002) (quoting *Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967) (quotation marks omitted)); *see Folkways Music Publishers., Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993) ("In order to advance the goals of arbitration, courts may vacate awards only for an overt disregard of the law and not merely for an erroneous interpretation.").

"A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citing *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)). If the party seeking vacatur does not meet that burden, the court "must" confirm the award. 9 U.S.C. § 9.

### 1. Timeliness.

The company argues that the arbitrator erred by finding the grievance arbitrable pursuant to the seven (7)-day time-limit set forth in Article II, Section 2(d). Pl.'s Br. 8. The company contends that the union should have requested arbitration of its July 16, 2012 grievance, which the company denied as non-arbitrable on July 23, 2012. It reasons that she "mischaracterized the Union's November 9, 2012, demand for arbitration as a 'grievance,' even though the letter clearly states that it is a demand for arbitration." Pl.'s Br. 9.

However, as Judge Spatt explained, the collective bargaining agreement "broadly provides that 'the Impartial Arbitrator shall have the authority to decide all grievances and complaints[,]' including 'any dispute arising out of the interpretation or application of the provisions of, or attachments to [agreement].'" *Veolia*, 24 F. Supp. 3d at 228. The grievance procedure provisions, Article II, Section 2(c) and (d) provide different procedures for different types of grievances or complaints; for "[a]ny grievance or complaint which any employee may have, or any appeal from discipline," the union must bring the grievance with the manager, and

8

then the Location's Chief Operating Officer, after which the union has seven (7) days to seek an arbitration hearing. But pursuant to subsection (d), for "the case where there is a dispute concerning the interpretation or application of [the] collective bargaining agreement," the party may submit an arbitration request "within seven (7) days after such dispute arises." Here, the union submitted an employee grievance on July 16, 2012, and received an adverse decision, from which it did not seek arbitration. Subsequently, a new dispute arose regarding the interpretation of the collective bargaining agreement—a "grievance" or "complaint"—and the union filed a demand for arbitration on November 9, 2012 under subsection (d). The arbitrator's finding of timeliness, therefore, drew its essence from the parties' agreement, and the Court has no basis to disturb it. Moreover, this collective bargaining agreement empowered the arbitrator to relax any time limitation for good cause.

2. Single-Grievance Policy.

The company argues: (1) that the arbitration award does not draw its essence from the collective bargaining agreement because it adds a new term: a requirement that it arbitrate multiple grievances on a single calendar day. Pl.'s Br. 16–18; and (2) that the arbitrator ignored the plain language of Article XXI, which voided this past practice. Pl.'s Br. 21; and (3)

However, "[i]t is well settled that the arbitrator may look beyond the terms of the agreement for guidance." *Radio & Television Broad. Engineers Union, Local 1212 v. WPIX, Inc.*, 716 F. Supp. 777, 781 (S.D.N.Y.) *aff'd sub nom. Radio & Television v. WPIX, Inc.*, 895 F.2d 1411 (2d Cir. 1989). The Supreme Court explained that, "[t]here are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579, 80 S. Ct. 1347, 1351 (1960). "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—

the practices of the industry and the shop—is equally part of the collective bargaining agreement although not expressed in it." *Id.* at 581–82, 80 S. Ct. at 1352. An arbitrator may interpret the collective bargaining agreement "in light of the parties intent revealed through bargaining history, past practices, rights established under earlier agreements, and other rudimentary sources of contract construction." *Western Electric Co., Inc. v. Communications Workers of America, AFL–CIO*, 450 F. Supp. 876, 882 (E.D.N.Y.), *aff'd mem.*, 591 F.2d 1333 (2d Cir. 1978).

The arbitrator determined that the collective bargaining agreement set forth the procedure for bringing each individual "grievance" or "complaint," and the authority for the arbitrator to decide "grievances," generally, but not whether the company could refuse to argue multiple grievances before the same arbitrator on the same calendar date. Accordingly, she looked to evidence of the parties' intent and bargaining history: the fact that the parties had always construed the identical contractual language to allow up to six (6) grievance-arbitrations per calendar date, and that MTA's former general counsel was also the company's chief negotiator, and was able to negotiate new contractual language. In doing so, the arbitrator acted well within her authority, and her award drew its essence from the parties' contractual arrangement. The Court has no basis to disturb it.

### III.  CONCLUSION

For the foregoing reasons, plaintiff's summary judgment motion is denied, and defendant's motion is granted. The case is dismissed with prejudice. The clerk is directed to close the case.

**SO ORDERED**.

s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

Dated: November 6, 2015
      Central Islip, New York